## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ISAAC GIBSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 5310 |
| v. ) | |
| ) | Judge Ruben Castillo |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

Isaac Gibson brought suit against the City of Chicago and Chicago Police Officer Vincent
Baldassano (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging
claims of false arrest, excessive force, and a state law claim of malicious prosecution. (R. 1,
Compl.) After a three-day trial, a jury returned a verdict in favor of Gibson and against
Defendants as to his claim of false arrest, and in favor of Defendants and against Gibson as to his
claims of excessive force and malicious prosecution. Presently before the Court is Gibson's
motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 ("Section 1988 "). (R. 76,
Pl.'s Mot.) For the reasons stated below, the motion is granted in part and denied in part.

### BACKGROUND

Gibson filed this lawsuit against Defendants on August 23, 2010. (R. 1, Compl.) Gibson
alleged that on June 13, 2009, he observed several police officers arresting and hitting two men
who had been involved in a fight in the area. (*Id.* ¶¶ 10-11.) He claimed that when he began
taking pictures of the officers hitting the men, Officer Baldassano approached him and grabbed
his camera phone. (*Id.* ¶¶ 12-13.) Gibson further alleged that after he took the phone back,
Officer Baldassano grabbed him and "violently swung" his body into a fence, and Gibson's face

hit a crate attached to the fence, resulting in a large gash under his eye. (*Id.* ¶¶ 15-17.) Officer

Baldassano signed criminal complaints against Gibson for mob action and resisting arrest, but

Gibson contended that there was no probable cause for these charges and that Officer Baldassano

acted "willfully and wantonly, maliciously, and with a conscious disregard and deliberate

indifference" to Gibson's rights. (*Id.* ¶¶ 18-19.) Gibson was found not guilty of both charges

after a trial on June 14, 2010. (*Id.* ¶ 20.) As a result of these events, Gibson claimed he suffered

damages including loss of physical liberty, physical pain and suffering, disfigurement, emotional

distress, and pecuniary damages including attorneys' fees, money posted as bond, and lost wages.

(*Id.* ¶ 22.)

Based on these events, Gibson brought claims of excessive force and false arrest pursuant

to Section 1983, and a state law claim for malicious prosecution. (*Id.* ¶¶ 23-32.) Gibson also

brought state law *respondeat superior* and indemnification claims. (*Id.* ¶¶ 33-36.) He sought

compensatory and punitive damages.

On August 5, 2011, after a three-day trial, a jury returned a verdict in favor of Gibson and

against Defendants as to his claim of false arrest, and in favor of Defendants and against Gibson

as to his claims of excessive force and malicious prosecution. (R. 64, Verdict.) The jury

awarded Gibson $7,500 in compensatory damages. (*Id.*)

## DISCUSSION

The Civil Rights Attorney's Fees Awards Act provides that: "[i]n any action or

proceeding to enforce a provision of . . . [Section 1983] . . . the court, in its discretion, may allow

the prevailing party . . . a reasonable fee as part of the costs[.]" 42 U.S.C. § 1988. The Court's

analysis of an appropriate fee award begins with determining whether a plaintiff is entitled to

"prevailing party" status. *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 709 (7th Cir. 2005).[1] Next, if the plaintiff crosses this "statutory threshold," the Court must determine whether the claimed fees are "reasonable" under the circumstances. *Id.* Here, Defendants do not dispute that Gibson is entitled to "prevailing party" status and thus the main dispute is whether Gibson's requested fees are "reasonable." The "starting point" for this inquiry is the lodestar figure—"the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (citation omitted). Once this figure is determined, the Court considers the factors set out in *Hensley v. Echkerhart*, 461 U.S. 424 (1983), and adjusts the fee award accordingly. *Id.*

## I.     Lodestar amount

As the party seeking the award of attorney's fees, Gibson bears the burden of establishing the reasonableness of the time expended and hourly rates charged by his attorneys used to determine the Lodestar amount. *Hensley*, 461 U.S. at 437; *Spellan v. Bd. of Ed. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995). Gibson requests a total of $207,502.50 in attorneys' fees calculated as follows:

| Attorney | Hourly Rate | Hours | Total per Attorney |
|----------|-------------|-------|--------------------|
| Jackowiak | $425 | 217.6 | $92,480.00 |
| Hamilton | $425 | 135 | $57,375.00 |
| Yarusso | $350 | 36.8 | $12,880.00 |
| Nicholas | $275 | 96.8 | $26,620.00 |
| Melyon | $175 | 103.7 | $18,147.50 |
| | | **TOTAL** | $207,502.50 |

---

[1] The standards for determining reasonable attorneys' fees under Section 1988 are the same as those used in actions brought under Title VII and the Individuals with Disabilities Act. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 n.1 (7th Cir. 2011); *Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U*, 109 F.3d 1250, 1253 n.2 (7th Cir. 1997).

(R. 76, Pl.'s Mot. at 6.)

### A.  Reasonableness of Gibson's attorneys' hourly rates

The Court first addresses the reasonableness of the hourly rates sought by Gibson's attorneys. A "reasonable" hourly rate is "one that is 'derived from the market rate for the services rendered.'" *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). Thus, an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Id.* If an attorney uses contingent fee arrangements, the "next best evidence" of the attorney's market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999). The Seventh Circuit has "expressed a preference for third party affidavits that attest to the billing rates of comparable attorneys." *Pickett*, 664 F.3d at 640. The party seeking fees "bears the burden of producing satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* (internal quotation marks and citation omitted). If that burden is satisfied, the burden shifts to the other party to offer evidence that sets forth "good reason" why a lower rate should be awarded. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996) (internal quotation marks and citations omitted). If the party seeking fees fails to carry that burden, the Court may properly "make its own determination of a reasonable rate." *Pickett*, 664 F.3d at 640 (citation omitted).

### i.  Lawrence Jackowiak's rate

Gibson seeks a rate of $425 per hour for the time Lawrence Jackowiak, an attorney in practice since 1995, expended on Gibson's case. (R. 76, Pl.'s Mot. at 6.) In support of this rate,

Gibson has submitted Jackowiak's own affidavit, the affidavits of two attorneys, and a comparison of the requested rate with the Laffey Matrix. (*Id.*) Although this evidence provides some support for the requested rate, the Court concludes that Gibson has failed to carry his burden and that a lower rate for Jackowiak's work in this case is warranted.

The evidence put forth by Gibson in support of Jackowiak's requested rate is weak at best. First, Jackowiak's affidavit fails to provide any evidence of the rates he charges or has charged in the past, fee awards he has received in similar cases, or rates charged by comparable attorneys. Instead, after listing his qualifications, he merely concludes that his rate of $425 per hour is "well within the range of normal hourly rates charged by attorneys of comparable ability and experience in the Chicago area during the same time period." (R. 76, Pl.'s Mot., Ex.1 ¶ 8.)

The affidavits provided by attorneys Francis Kasbohm and Marcelle LeCompte are similarly unsupported. Again, both attorneys merely list their own qualifications, comment briefly on Jackowiak's qualifications, and conclude that the requested rate is "within the range of normal hourly rates charged by attorneys with similar experience," (R. 76, Pl.'s Mot., Ex. 8 ¶ 9), and "reasonable and commensurate with the rates charged by other attorneys," (R. 76, Pl.'s Mot., Ex. 9 ¶ 11.)[2] The Seventh Circuit has criticized third party affidavits "that merely opine on [the attorney's] market rate," preferring instead "affidavits that actually provide evidence as to what the comparable attorneys charge for similar services." *Pickett*, 664 F.3d at 647 (citing *Batt v. Micro Warehouse*, 241 F.3d 891, 895 (7th Cir. 2001)). Neither Kasbohm nor LeCompte

---

[2]  The Court is also troubled by Kasbohm's statement that "all" of the attorneys seeking fees "have significant trial experience and significant background in search and seizure law, the Fourth Amendment and the litigation of constitutional issues," (R. 76, Pl.'s Mot., Ex. 8 ¶ 8), when it is undisputed that one of the attorneys is a 2010 law school graduate and another attorney seeking fees graduated in 2008.

provided their own rates, or those of comparable attorneys, however. Without this support, it is difficult for the Court to evaluate how Jackowiak's requested rate compares to "the hourly rates that attorneys of comparable skill, experience, and reputation charge for similar work." *Pickett*, 664 F.3d at 641 (citations omitted); *see also Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *16-17 (N.D. Ill. Apr. 16, 2012) (finding similar affidavits to be "of no help").

Finally, Gibson relies on the Laffey Matrix, a guideline the United States Attorney's Office in Washington, D.C., has created to estimate reasonable attorneys' fees, to support the requested rate for Jackowiak.[3] (R. 76, Pl.'s Mot. at 6.) Gibson contends that Jackowiak's hourly rate, adjusted for the Chicago market, would be $453 per hour. (*Id.*) While the Court considers this evidence, its persuasiveness is limited by several factors. First, the Seventh Circuit has never formally adopted the Laffey Matrix and has stated only that the Laffey Matrix "can assist the district court with the challenging task of determining a reasonable hourly rate." *Pickett*, 664 F.3d at 648. Second, courts in this District primarily rely on the Laffey Matrix as only one factor in determining a reasonable rate. *See Sandra T.-E. v. Sperlik*, No. 05 C 473, 2012 WL 1107845, at *1 (N.D. Ill. Apr. 1, 2012) (listing cases). Finally, Gibson has failed to convince the Court of the appropriateness of the pay differential he contends Jackowiak is entitled to as an attorney practicing in Chicago as opposed to Washington, D.C., especially given that several courts in this District have noted that the Laffey Matrix rates are significantly higher than those customarily charged in this District, and have accordingly given "little weight" to the Laffey Matrix. *See Thompson v. City of Chi.*, No. 07 C 1130, 2011 WL 2923694, at *4 (N.D. Ill. Jul. 18, 2011);

---

[3] *See* Laffey Matrix 2003-2012, U.S. Attorney's Office, http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf (last visited July 5, 2012).

*Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *5 (N.D. Ill. Feb. 13, 2012).

Without the pay differential, the 2010 rate for an attorney with 11-19 years of experience is $420

per hour, and the 2011 rate is $435 per hour. Accordingly, the Court considers the Laffey Matrix

rates as evidence in support of Jackowiak's requested rate, but they are far from determinative.

The only evidence before the Court of a rate received by any attorney relevant to

Jackowiak's requested rate is a case submitted by Defendants in which Jackowiak was awarded

fees at a rate of $325 per hour in late 2008. *See Lee v. City of Chi.*, 07 C 2035, 2008 WL

5377798, at *1 (N.D. Ill. Dec. 18, 2008). Based on this rate, Defendants argue that the more

appropriate rate for Jackowiak is $350 per hour because a 30% increase in his rate over a two-

and-a-half-year period is "entirely unwarranted." (R. 77, Defs.' Resp. at 19.)[4]

Taking into account all of this evidence, the Court concludes that a rate of $395 per hour

is reasonable. While Gibson has provided evidence that $425 per hour for Jackowiak's work is

"within the range" of "comparable" attorneys, the Court finds that the more persuasive evidence

of the $325 per hour fee award Jackowiak received in late 2008 indicates that a lower rate in this

case is reasonable. *See Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d

487, 491 (7th Cir. 2009) ("[A] previous attorneys' fee award is useful for establishing a

reasonable market rate for similar work whether it is disputed or not."). Defendants' proposed

rate of $350, which "reflect[s] inflation" since Jackowiak was awarded a rate of $325 per hour,

---

[4] The Court is not persuaded by Gibson's argument that *Gillespie v. City of Chicago*, No. 09 C
2733, slip op. at 1 (N.D. Ill. Sept. 29, 2010), is more on point for Jackowiak's proposed rate. (R.
81, Pl.'s Reply at 8-9.) That the plaintiff in *Gillespie* requested $155,000 for attorneys' fees that
included an hourly rate of $400 for Jackowiak does not mean that Jackowiak received this
requested rate; the matter settled out of court and the parties submitted an agreed order awarding
the plaintiff $139,000 in attorneys' fees. Furthermore, Jackowiak has not provided this Court
with any evidence of his billing records or the amount he actually received from that case.

(R. 77, Defs.' Resp.), fails to take into account the experience gained by Jackowiak during that time and the resulting increase in his hourly rate. Nevertheless, the Court agrees with Defendants that a $100 dollar increase in Jackowiak's rate over a two-and-a-half-year period is not warranted. Accordingly, the Court concludes that $395 per hour is a reasonable market rate for Jackowiak's services on this case.

### ii. Torreya Hamilton's rate

Gibson next requests a rate of $425 per hour for Torreya Hamilton. (R. 76, Pl.'s Mot. at 6-7.) In support of this request, Gibson provides an affidavit from Hamilton, affidavits from two practicing attorneys, Jeffrey B. Granich and Thomas Needham, and the Laffey Matrix rates. (*Id.*) This evidence, however, suffers from the same deficiencies as the evidence in support of Jackowiak's requested rate. Hamilton's affidavit does not provide any evidence of the rates she charges or has charged clients, or fees she has been awarded in the past. Nor does she cite any rates charged by comparable attorneys, or fees awarded to comparable attorneys. She merely lists her qualifications and states that her billing rate is $425 per hour and that she "believe[s] this rate to be commensurate with civil rights attorneys with [her] experience and skill." (R. 76, Pl.'s Mot., Ex. 2.) The affidavits of Granich and Needham, while effusive in their praise of Hamilton's skills and experience as a trial lawyer, also fail to support their conclusions that the rate sought by Hamilton is "eminently reasonable," (R. 76, Pl.'s Mot., Ex. 6), and "reasonable and well-deserved." (R. 76, Pl.'s Mot., Ex. 10.) As both parties agree that Hamilton and Jackowiak are "attorneys of comparable skill, experience, and reputation," however, the Court concludes that a rate of $395 per hour is reasonable in this case for the time expended by Hamilton.

8

### iii.  Adele Nicholas' rate

Gibson seeks a rate of $275 per hour for Adele Nicholas.  (R. 76, Pl.'s Mot. at 7.)
Defendants do not object to this rate, and the Court concludes that it is reasonable.

### iv.  Amanda Yarusso's rate

Gibson seeks a rate of $350 per hour for Amanda Yarusso.  (*Id.*)  Defendants argue that
Yarusso should receive the same rate as Nicholas because Yarusso only worked on the final
pretrial order and motions *in limine* in the case.  (R. 77, Defs.' Resp. at 19-20.)  The Court does
not find this to be a persuasive argument for a reduction in Yarusso's rate, as Yarusso has five
more years of experience than Nicholas, and Yarusso's rate is supported by her own detailed
affidavit and the affidavit of Amanda Antholt, both of which provide examples of rates received
by attorneys of similar levels of experience as Yarusso.  (R. 76, Pl.'s Mot., Exs. 4, 11.)
Accordingly, the Court concludes Yarusso's rate of $350 per hour is a reasonable market rate.

### v.  Ryan Melyon's rate

Finally, Gibson requests a rate of $175 per hour for attorney Ryan Melyon.  (R. 76, Pl.'s
Mot. at 8.)  Defendants do not object to this rate, and the Court finds that it is reasonable.

### B.  Reasonableness of time expended

The Court now turns to the second figure in the Lodestar calculation—the hours Gibson's
attorneys "reasonably expended" litigating Gibson's case.  The Supreme Court has directed that
"[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request
hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice
ethically is obligated to exclude such hours from his fee submission."  *Hensley*, 461 U.S. at 444.
Accordingly, if the prevailing party fails to exercise the proper billing judgment, a court should

exclude from the fee calculation "hours that were not 'reasonably expended.'" *Id.* (citation omitted). Here, Defendants contend that Gibson's fee petition "suffers from a plethora of insufficiencies and numerous entries that are excessive, redundant, or otherwise unnecessary[.]" (R. 77, Defs.' Resp. at 3.) The Court will consider each of Defendants' objections in turn.

### i. "Block billing"

Defendants first argue that Gibson's attorneys engaged in impermissible "block billing" by combining several discrete tasks in a single billing entry without specifying the amount of time spent on each task. (*Id.* at 4.) While block billing "does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank and Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). Nevertheless, "when the [attorney's] time records do not describe tasks with particularity, and do not reveal the amount of time claimed to have been spent on a particular task, the judge is in no position to make a reasonable estimate of the amount of time that should have been required." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117, 1119 (N.D. Ill. 2006). As a result, courts have reduced or denied attorneys' fees where block billing and vague descriptions have left them unable to discern whether the amount of time spent on each individual task was reasonable. *See Cooper v. Verifications, Inc.*, No. 1:04-CV-385-TS, 2008 WL 5332190, at *12 (N.D. Ind. Dec. 18, 2008) ("Where a court finds hours to be insufficiently documented, it may disallow those hours or reduce the entire fee award by a proportionate amount.") (internal quotation marks and citation omitted). The relevant inquiry is thus whether the time entries are "sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation." *Crispin R., Jr. v. Bd. of Educ. of the City of Chi., Dist. 299*, No. 09-CV-3993,

2010 WL 3701328, at *6 (N.D. Ill. Sept. 10, 2010). The Seventh Circuit has indicated that "the amount of itemization and detail required is a question for the market[.]" *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). Thus, "[i]f counsel submits bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *Id.* (citation omitted).

Here, Defendants object to 60 entries as improper block billing, totaling 67 hours for Jackowiak, 14.4 hours for Nicholas, 23.6 hours for Yarusso, and 5.1 hours for Melyon.[5] (R. 77, Defs.' Resp. at 5-6.) After reviewing these time entries, the Court concludes that the majority of the entries objected to are sufficiently detailed to permit adequate review of the time billed. There are, however, several exceptions, to which the Court now turns.

a.    **Jackowiak's time entries**

Regarding Jackowiak's entries, there are a number of entries that list conferring with co-counsel among other tasks, without separating the time for each task or providing additional information about the meeting with co-counsel. Without further detail, the Court is not able to determine whether the amount of time spent on each task is reasonable in the following entries: October 10, 2010 (.7); November 1, 2010 (.6); December 14, 2010 (1.1); January 7, 2011 (.8); April 14, 2011 (.7); July 13, 2011 (4.5); July 15, 2011 (2.5); July 31, 2011 (1.2, 2.2); August 1, 2011 (1); August 3, 2011 (3); August 4, 2011 (2.6). (R. 76, Pl.'s Mot., Ex. 14.) The Court, in its discretion, will reduce the time in these entries by half. *See Thompson*, 2011 WL 2923694, at *2 (discounting block-billed hours by half). Additionally, the time in the following entries will be

---

[5] Defendants object to one of Jackowiak's entries on July 28, 2011, for 1.8 hours. (R. 77, Defs.' Resp. at 5.) No such entry exists on Jackowiak's time sheets, so the Court does not consider this objection. Additionally, although Defendants state that they are requesting a deduction of 19.9 hours from Yarusso's time, their objections actually seek a total reduction of 23.6 hours.

deducted in their entirety because the entries contain time for tasks that was not "reasonably expended," such as waiting for the verdict, *Warfield v. City of Chi.*, 733 F. Supp. 2d 950, 960 (N.D. Ill. 2010), and work that could have been performed by clerical staff, such as purchasing a hard drive from an electronics store, *Spegon*, 175 F.3d at 553: July 31, 2011 (1.2); August 5, 2011 (2, 2.1). *See Warfield*, 733 F. Supp. 2d at 959 n.9 (striking entry that included both compensable and non-compensable tasks without indicating how many hours were spent on the compensable tasks); *Lopez v. City of Chi.*, No. 01 C 1823, 2007 WL 4162805, at *5 n.1 (N.D. Ill. Nov. 20, 2007) (striking entries where entries described both reasonable and unreasonable activities "but fail to specify how much time was spent on each task"). In sum, the Court reduces Jackowiak's hours by 15.75 hours based on Defendants' objection to Jackowiak's use of block billing.

### b.     Nicholas' time entries

As to Defendants' objections to block billing by Nicholas, the Court agrees that the lack of detail and the "lumping together" of multiple tasks in the following entries inhibit the Court's inquiry into the reasonableness of the time expended: November 10, 2010 (2.8); March 10, 2011 (1.3); March 29, 2011 (1.4); July 5, 2012 (1.6). (R. 76, Pl.'s Mot., Ex. 16.) Because these entries should have specified the time for each individual task and included descriptions more informative than the vague "preparation" for various court appearances, the Court will reduce this time by half, leading to a deduction of 3.55 hours from Nicholas' time. *See United Cent. Bank v. Kanan Fashions, Inc.*, No. 10 CV 331, 2012 WL 1409245, at *6 (N.D. Ill. Apr. 23, 2012) (reducing hours by 50% where entries merely stated "prepare for" hearing); *see also Role Models*

*Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (noting that when time records "lump together multiple tasks," it is "impossible to evaluate their reasonableness") (citation omitted).

### c.    Yarusso's and Melyon's time entries

Turning to the time sheets of Yarusso and Melyon, the Court finds that the entries are sufficiently detailed to permit the Court to assess the reasonableness of the time expended. Although several entries combine discrete tasks without specifying the amount of time spent on each task, the combined tasks are related and were performed in connection with the same end-product. Thus, the Court will not reduce the hours of Yarusso or Melyon based on Defendants' "block billing" objection.[6]

### ii.    "Catch-up" time for Hamilton and Yarusso

Defendants next object to time expended by Hamilton and Yarusso after they were brought on the case that Defendants characterize as "catch-up time." (R. 77, Defs.' Resp. at 7.) According to Defendants, the "substantial amount of time" Hamilton and Yarusso billed for reviewing the files in the case resulted from their "late participation" in the case due to attorney turnover. (*Id.* at 7-8.) Recognizing that some of the time billed would have been necessary even if Hamilton and Yarusso had been involved in the case since the beginning, Defendants request that the Court reduce 21.2 of Hamilton's hours and 9.5 of Yarusso's hours by half. (*Id.* at 8.) The Court agrees that Defendants should not be responsible for time expended solely as the result of attorney turnover. Nevertheless, the Court declines to reduce the hours of Hamilton and Yarusso based on this objection as Defendants have failed to persuade the Court that the hours

---

[6] The Court notes that Defendants raised no "block billing" objection to Hamilton's hours, and this is no surprise given the detailed nature of her time sheets. The Court encourages the attorneys whose hours the Court has reduced for insufficient detail to use Hamilton's time sheets as a model so as to avoid "block billing" objections in the future.

objected to resulted from attorney turnover as opposed to reasonable time spent preparing for trial. As Gibson points out, it is common for a more junior attorney with a corresponding lower billable rate to handle routine discovery and pretrial matters, and for more senior attorneys to take a larger role in preparing and trying the case. This appears to be what happened here, and the Court therefore declines to reduce Gibson's award of attorneys' fees on this ground.

### iii. Melyon's time

Defendants next seek a significant reduction in Melyon's hours based on Gibson's failure to prove that the hours he billed were "reasonably expended." (R. 77, Defs.' Resp. at 9-11.) The Court agrees that Gibson has largely failed to justify the 103.7 hours in attorneys' fees billed by Melyon, and his hours must be reduced accordingly. Melyon was admitted to the Illinois bar in 2010, and Gibson's trial appears to be his first trial experience. (R. 76, Pl.'s Mot., Ex. 5.) As Defendants point out, and Gibson does not dispute, although Melyon billed time for attending the entirety of the trial as well as certain pre-trial events such as the deposition of Tinithia Smith, he did not examine a single witness or make an argument to the Court, and he did not even file an appearance on the case until after the trial concluded. While gaining experience during Gibson's trial was undoubtedly beneficial to Melyon, Gibson has not demonstrated that these hours were "reasonably expended." Additionally, some of Melyon's time was billed for tasks that are clerical in nature and therefore noncompensable, such as organizing and producing files for other attorneys and traveling to an office supply store to have an exhibit made. *Spegon*, 175 F.3d at 553. The Court will accordingly deduct the hours Melyon billed for attending the trial and Tinithia Smith's deposition as well as for time he spent on clerical tasks. This reduction totals 48.7 hours.

Contrary to Defendants' contentions, however, Gibson has sufficiently justified some time billed by Melyon. This time falls in two categories. In the first category is time billed by Melyon that was "reasonably expended" in the course of the litigation and that may be billed at Melyon's rate of $175 per hour. This includes time Melyon spent reviewing files, strategizing with co-counsel, analyzing the video provided by the police that was presented at trial, and preparing the bill of costs and his fee petition. The following entries fall in this category: July 25, 2011 (.8, 1.5, 2.5); July 26, 2011 (.6, .5, .3); July 27, 2011 (.2, .2); July 28, 2011 (1.5); July 29, 2011 (1.6); July 30, 2011 (.3, 2.5); July 31, 2011 (2.6, 6); August 3, 2011 (1); September 1, 2011 (3, .2); September 2, 2011 (2). (R. 76, Pl.'s Mot., Ex. 18.) Accordingly, 27.3 hours of the time billed by Melyon is recoverable at a rate of $175 per hour.

The second category of time Melyon billed that is compensable is time for tasks that are more appropriately reimbursed at a paralegal rate of $100 per hour. *See Blackwell*, 2012 WL 469962, at *6-9 (reducing attorney's hourly rate to $100 per hour for work that should have been delegated to a paralegal, and noting that "'[t]he relevant inquiry for a request for paralegal fees is whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder'") (quoting *Spegon*, 175 F.3d at 553). This includes the time Melyon spent on providing technical support for the viewing of the video provided by the police that was subsequently shown at trial, the preparation of witness statements and other materials for depositions and the trial,[7] providing technical support during the trial, and

---

[7] The Court notes that the "preparation" of witness binders may require the skill level of an attorney or a paralegal depending on the specific task. Because Melyon's entries do not provide the level of specificity for the Court to make that determination and Gibson bears the burden of proving the reasonableness of the time expended, the Court awards the paralegal rate for these tasks.

drafting a courtesy copy letter. The following entries, constituting 27.7 hours, fall in this category: July 25, 2011 (.7); July 26, 2011 (1.5); July 27, 2011 (.5, 1.3); July 28, 2011 (.5); July 29, 2011 (3); July 30, 2011 (1, 2); July 31, 2011 (.6); August 1, 2011 (5, 2.4); August 2, 2011 (2.4); August 3, 2011 (1.2, 4); August 4, 2011 (1.2); August 5, 2011 (.2); August 16, 2011 (.2). (R. 76, Pl.'s Mot., Ex. 18.) In sum, 27.7 of Melyon's hours will be reimbursed at the paralegal rate of $100 per hour, and 27.3 hours will be reimbursed at a rate of $175 per hour.

### iv.  Duplicative entries

Next, Defendants object to certain hours billed by Gibson's attorneys that Defendants contend are duplicative. (R. 77, Defs.' Resp. at 11.) Because duplicative time that could not be reasonably billed to a client also cannot be billed to an adversary through a fee-shifting statute, the Seventh Circuit has cautioned that "the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time[.]" *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989) (internal citations omitted); *see also Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) (nothing that courts are "encouraged to scrutinize fee petitions for duplicative billings when multiple lawyers seek fees"). At the same time, the Seventh Circuit has also recognized that merely because two lawyers have billed for the same task does not mean that the hours should be deducted. *See Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008). Thus, the relevant inquiry remains whether the time was "reasonably expended."

Here, Defendants contend that 4.6 hours of Jackowiak's time spent working on the police video and the preparation of witness binders should be excluded as duplicative of the time claimed by Melyon for the same tasks. (R. 77, Defs.' Resp. at 11.) In response, Gibson argues

"[i]t was imminently reasonable for both attorneys to prepare video recordings for presentation at trial and review exhibit binders together" and that Defendants "have offered no basis for their contention that this time should be excluded other than their blanket statement that it is 'duplicative.'" (R. 81, Pl.'s Reply at 14.) Gibson's argument ignores the fact that it is his burden to prove the reasonableness of his requested attorneys' fees, and his conclusory statement that it was "imminently reasonable" for both attorneys to bill that time does not persuade the Court that the time was "reasonably expended." This is particularly true given that the brief description of the tasks indicates that they required the skill level of a paralegal, and should be billed at the corresponding lower hourly rate. Gibson, however, has failed to justify two attorneys billing for these same tasks even at the lower rate. Accordingly, the Court will deduct 4.6 hours from Jackowiak's time.

Defendants also argue that the attendance of both Hamilton and Jackowiak at the deposition of Tinithia Smith was unnecessary, and that the 3.5 hours Hamilton billed for the preparation and attendance at the deposition should be deducted as duplicative. (R. 77, Defs.' Resp. at 11.) The Court disagrees. As Gibson points out, Smith was not disclosed by Defendants until a week before trial, and she was a key witness for Gibson. Given the time constraints and the importance of Smith as a witness, it was reasonable for both Hamilton and Jackowiak to attend the deposition, and the Court declines to reduce Hamilton's hours based on this objection.[8]

v.    **Final pretrial order and motions *in limine***

---

[8] As discussed above, the Court has already deducted the time claimed by Melyon for attending the deposition of Tinithia Smith.

Defendants next object to the 34.6 hours spent by Gibson's attorneys on the final pretrial order and motions *in limine*. (*Id.* at 12-13.) Defendants have identified 11.2 hours billed by Jackowiak and 23.4 hours billed by Yarusso for the preparation and editing of the order and motions. (*Id.*) They contend that this time was excessive because the pretrial order was only three pages in length and consisted of eleven exhibits and six witnesses, and the six motions *in limine* were "fairly standard" and "recycled." (*Id.*) In response, Gibson argues that because Defendants have not provided their own billing records for this matter, they are "in a weak position" to challenge the reasonableness of the time spent by Gibson's attorneys on these tasks. (R. 81, Pl.'s Reply at 14.) The Court agrees that Defendants' failure to comply with Local Rule 54.3 places them at a disadvantage in seeking a reduction of the hours spent by Gibson's attorneys on reasonableness grounds. *See Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934-35 (N.D. Ill. 2009) ("The purpose of Local Rule 54.3 is to avoid 'hypocritical' objections to the reasonableness of a fee requested.") (citing *Farfaras*, 433 F.3d at 569); *O'Sullivan v. City of Chi.*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007) (rejecting excessiveness challenge where, *inter alia*, "[t]he City has offered no objective standard, no 'reasonable' number of hours to spend on a given activity, with which to compare" to the plaintiff's fee request). Nevertheless, even absent Defendants' billing records, the Court concludes after a review of the relevant documents that the time spent by Yarusso on the pretrial order was excessive. Specifically, the Court finds that the 12.7 hours Yarusso spent "reviewing" and "organizing" files for the preparation of the pretrial order were excessive. (R. 76, Pl.'s Mot., Ex. 17 at 1.) Gibson has not pointed to any factors in this case such as a large volume of documents that would justify that much time spent "reviewing" and "organizing" documents at

such a late stage of the litigation. The Court will reduce this time by half, leading to a deduction of 6.35 hours from Yarusso's request. Additionally, the Court has already reduced the time billed by Jackowiak on these tasks by 3.5 hours based on Defendants' previous objections, resulting in a total of 24.75 hours expended by Gibson's attorneys on the pretrial order and the motions *in limine*. The Court concludes that this amount of time is reasonable, and declines to reduce Jackowiak's and Yarusso's hours further based on this objection absent the production of Defendants' billing records.

### vi. Post-trial hours

Next, Defendants argue that the time spent by Jackowiak and Hamilton relating to certain post-trial tasks is not recoverable. (R. 77, Defs.' Resp. at 13-14.) Specifically, Defendants contend that 5.5 hours spent by Jackowiak and four hours expended by Hamilton waiting to speak to jurors after the verdict, meeting with Gibson and co-counsel to debrief after the verdict, and consulting with jurors after the trial should be excluded. (*Id.*) Given Gibson's failure to justify this time as "reasonably expended," the Court largely sustains Defendants' objection and permits Jackowiak and Hamilton to each recover only one hour of this time. Regarding the "debriefing" time, while meeting with a client after a verdict to discuss post-trial issues is clearly reasonable, Jackowiak's entry indicates that the meeting also covered "lessons learned" and other topics Gibson has failed to show were pertinent to his case. Similarly, Gibson makes no arguments in support of his request for recovery of fees for the time expended waiting for and speaking with the jurors after the verdict. Because Gibson has failed to establish how the time

spent on these activities was "reasonably expended," the Court reduces Jackowiak's time by 2.4 hours, and Hamilton's time by 3 hours.[9]

### vii. Time spent on police event queries and recordings

Defendants next contend that the time spent by Gibson's attorneys listening to Office of Emergency Management and Communications recordings and reviewing event queries was excessive. (*Id.* at 14.) In total, Gibson's attorneys spent 11.1 hours on these tasks. Given that the recordings consisted of fifteen separate short 911 calls and one hour and 22 minutes of dispatch recordings, and the event queries were 25 pages long, the Court finds the time expended by Gibson's attorneys to have been "reasonably expended." Even if the vast majority of the recordings were ultimately not relevant to Gibson's case, his attorneys had to listen to all of the recordings to reach that conclusion. Additionally, as Gibson points out, a key part of his trial strategy was reconstructing a time line of events and correlating that time line with the events in the recordings and police video, and it is reasonable that more than one attorney listened to the recordings given their importance to Gibson's case.

### viii. Time spent for communication between counsel

Defendants next argue that Gibson's attorneys spent an excessive amount of time on "interoffice conferences, phone calls, correspondence or other communications among" themselves. (R. 77, Defs.' Resp. at 15.) The Seventh Circuit has recognized that "[t]he practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Tchemkou*, 517 F.3d at

---

[9] The Court has already eliminated 2.1 hours of Jackowiak's time objected to by Defendants on a different ground.

511-12. Nevertheless, because "internal meetings are not always the model of efficiency, and discussions of one case or client can easily bleed over into other matters[,]" attorneys should "identify explicitly the subject matter of their discussions" so that a reviewing court may assess whether the time billed was "reasonably expended." *Id.* at 512.

Defendants have identified 141.1 hours of time spent by Gibson's attorneys conferring with one another, and request that the Court reduce the amount of time not already deducted based on prior objections by 50%. (R. 77, Defs.' Resp. at 15.) Gibson, however, contends that the time spent by his attorneys in meetings and otherwise communicating reflected a strategy aimed at "efficiently divid[ing] tasks among attorneys while keeping the entire team abreast of important developments." (R. 81, Pl.'s Reply at 15.) Because the Court has already deducted time from Gibson's attorneys for time spent communicating with one another based on other objections, the remaining entries are sufficiently detailed, and Defendants have failed to provide their attorneys' billing sheets as a point of comparison to determine what amount of communication was "patently excessive," the Court, in its discretion, declines to further reduce Gibson's attorneys' hours based on this objection. *See Delgado v. Mak*, No. 06 C 3757, 2009 WL 211862, at *7 (N.D. Ill. Jan. 29, 2009) ("[I]f Defendants had been able to demonstrate that they performed similar tasks with similar results in substantially less time, the Court may well have reduced or eliminated certain entries from the lodestar.").

### ix. Preparation of fees and costs petitions

Finally, Defendants object to the amount of time expended by Gibson's attorneys in preparing the petitions for fees and costs. (R. 77, Defs.' Resp. at 16-18.) While time expended in preparation of a fee petition is compensable, the Seventh Circuit has observed that lawyers

21

often "litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1988). Accordingly, one factor considered in determining the reasonableness of time spent preparing a fee petition is "the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon*, 175 F.3d at 554. Where the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition. *Id.* In *Ustrak*, for example, the prevailing party's attorney spent 15 minutes preparing the fee petition for every hour spent litigating the merits. *Ustrak*, 851 F.2d at 988. Noting that this was "the tail wagging the dog, with a vengeance[,]" the Seventh Circuit reduced the requested time by two-thirds, and observed that the resulting "allowance is still a generous one." *Id.*; *see also Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir. 1999) (affirming district court's reduction of attorney's time spent preparing the attorneys' fee motion from 9.9 hours to 1.6 hours where the attorney spent just under 100 hours litigating the merits of the case).

Here, Defendants have identified a total of 73 hours spent by Gibson's five attorneys in preparing the petitions for fees and costs. (R. 77, Defs.' Resp. at 17.) After reducing the time not "reasonably expended" by Gibson's attorneys detailed above, Gibson's attorneys spent 432.55 hours litigating the merits of this case, meaning that they spent ten minutes preparing the motions for costs and fees for every hour on the merits. Although given the opportunity, Gibson has not disputed Defendants' calculation of the time his attorneys spent on the fee and costs petitions, nor denied that this time is significantly larger as a proportion of total fees than that awarded in the cases cited by Defendants. Accordingly, the Court concludes that the time

requested for the preparation of the fee award is excessive, and reduces by half the time claimed

by Jackowiak, Yarusso, and Melyon, as the amount they request for their work on the fee and

costs petition totals around 20% of their total requested fees. This results in a 17.4 hour

deduction for Jackowiak, a 2.65 hour deduction for Yarusso, and a 4.2 hour reduction for

Melyon.

After considering Gibson's requested fees and Defendants' objections, the lodestar in this

case stands at $164,419 based on the following breakdown of reasonable hourly rates and hours

expended:

| Attorney | Awarded Hourly Rate | Requested hours | Reductions | Total Hours Awarded | Total per Attorney |
|---|---|---|---|---|---|
| Jackowiak | $395 | 217.6 | 40.15 (15.75 block billing; 4.6 duplicative; 2.4 post-trial; 17.4 fee petition) | 177.45 | $70,092.75 |
| Hamilton | $395 | 135 | 3 (post-trial) | 132 | $52,140.00 |
| Yarusso | $350 | 36.8 | 9 (6.35 excessive; 2.65 fee petition) | 27.8 | $9,730.00 |
| Nicholas | $275 | 96.8 | 3.55 (block billing) | 93.25 | $25,643.75 |
| Melyon (lawyer rate) | $175 | 103.7 | 80.6 (48.7 clerical or otherwise not recoverable; 4.2 fee petition; 27.7 paralegal rate) | 23.1 | $4,042.50 |
| Melyon (paralegal rate) | $100 | 0 | | 27.7 | $2,770.00 |
| | | | | **TOTAL** | $164,419.00 |

## II.  Adjustment of the lodestar under *Hensley*

The calculation of the lodestar figure does not end the Court's inquiry. Although there is

"a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award,

*Pickett*, 664 F.3d at 639 (citations omitted), the Supreme Court explained in *Hensley*:

> There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.

461 U.S. at 434 (internal citation omitted). *Hensley* instructs that where a plaintiff prevails on only some of her interrelated claims, as is the case here, "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. This inquiry proceeds in two steps. First, the Court must decide whether a downward adjustment of Gibson's lodestar recovery is proper under the circumstances. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010). Second, if a reduction in fees is appropriate, the Court must determine the reasonable amount to reduce the fees given the results actually obtained by Gibson. *Id.*

Regarding the first inquiry, the Court concludes that Gibson achieved only "partial success" and a downward adjustment of his attorneys' fees is warranted. Gibson brought claims for false arrest, excessive force, and malicious prosecution, and prevailed on only his false arrest claim. Additionally, the jury awarded Gibson only $7,500 in compensatory damages even though he sought both compensatory damages as well as punitive damages of three-to-five times the compensatory damage award. Of course, in hindsight, Gibson maintains that the "most important issue" was the false arrest claim, that there was "little dispute" regarding the excessive force claim, and that the malicious prosecution claim was "ancillary and subordinate" to the Section 1983 claims. (R. 81, Pl.'s Reply at 3.) Defendants conversely argue that the "gravamen" of Gibson's lawsuit was the excessive claim force. (R. 77, Defs.' Resp. at 21.) The Court believes that both Section 1983 claims were equally pressed by Gibson's attorneys at trial, and

24

thus his success on only one of the two is only a "partial success." Thus, a reduction in the lodestar figure is appropriate.

The Court now turns to the difficult question of the amount by which to reduce the lodestar due to Gibson's partial success. As the Seventh Circuit has noted, "[p]recision is impossible to reach in such calculations[.]" *Sottoriva*, 617 F.3d at 976. The Supreme Court in *Hensley* counseled against "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." 461 U.S. at 435. The Seventh Circuit has also "rejected the notion that fees must be calculated proportionally to damages." *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2000). Defendants propose a reduction of 60% based on their argument that the claim on which Gibson prevailed was "the least significant of his three claims," but the Court has already rejected that characterization. Gibson's contention that no reduction is warranted is similarly unpersuasive. Instead, the Court concludes that a reduction of 35% is appropriate. This conclusion is based on three main considerations. First, the jury's verdict, while not insubstantial, constituted only partial success for Gibson and the two claims on which the jury found for Defendants were not merely ancillary claims as Gibson contends. Second, the case was not particularly complex; there were no dispositive motions or novel legal issues addressed by the parties, and the trial lasted only three days. Finally, the Court considers the purpose behind fee shifting statutes such as Section 1988, which is to encourage private enforcement of laws designed to advance civil rights. *See Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 n.13 (7th Cir. 1995) ("Attorney's fees in Title VII litigation are not limited to a proportion of the monetary damages assessed in the case because, as Congress has recognized, a plaintiff in a civil rights suits acts 'not for himself alone but also as a

'private attorney general,' vindicating a policy that Congress considered of highest importance.'") (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986)). Based on these considerations, the Court reduces the lodestar amount by 35% to $106,872.35.

## III.    Costs

Finally, Gibson seeks $2,845.81 in costs under Section 1988. (R. 76, Pl.'s Mot. at 8.) Defendants contend that Gibson is not entitled to recovery for a reusable hard drive used to play videos at trial as well as for Westlaw legal research, and that his costs should be reduced accordingly. (R. 77, Defs.' Resp. at 23-24.) Gibson does not dispute that he is not entitled to recover these costs, and the Court therefore reduces the amount of the costs $102.06 and awards him $2,743.75 in costs.

## CONCLUSION

For the foregoing reasons, Gibson's motion for attorneys' fees and costs is granted in part and denied in part. The Court, in its discretion, awards Gibson $106,872.35 in attorneys' fees and $2,743.75 in costs.

Entered:    

**Judge Ruben Castillo**
**United States District Court**

**Dated:** July 6, 2012